### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID RAY A.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 20-CV-420-SMY |
| | ) |
| MARTIN O'MALLEY[2], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**Yandle, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff David Ray A. seeks judicial review of the final agency decision denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for a period of disability and DIB on March 24, 2014, alleging an onset date of October 12, 2013 (Doc. 21 at p. 2). Following an evidentiary hearing, the ALJ denied the application for benefits in a decision dated April 12, 2017 (Tr. 20). On November 20, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision a final decision of the Commissioner (Tr. 17).

Plaintiff first filed this matter in the Southern District of Illinois in 2018. Magistrate Judge Clifford J. Proud Reversed and Remanded the case (*Anglin v. Commissioner of Social Security*,

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

[2] Martin O'Malley, is now the Acting Commissioner of Social Security. He is therefore substituted as the defendant in this case in his official capacity. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g).

3:18-cv-109-DWG).  Following rehearing on January 8, 2020, the ALJ issued a new decision denying Social Security disability benefits (Tr. 984-1004).  Because Plaintiff did not file exceptions to that decision to the Appeals Council, the decision of the ALJ became the final decision of the Commissioner after 60 days.  Plaintiff subsequently filed the instant action, arguing that the ALJ's decision is not supported by substantial evidence and is contrary to law (Doc. 1).

### Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. The ALJ made a material mistake of fact in assessing Plaintiff's residual functional capacity and ability to perform jobs in the national economy.

2. The ALJ's findings as to Plaintiff's auditory limitations are not supported by substantial evidence.

3. The ALJ did not adequately accommodate Plaintiff's moderate limitations in concentrating, persisting, or maintaining pace.

4. The ALJ's symptom evaluation is not supported by substantial evidence.

### Legal Standard

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.  Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments

enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work?  *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled.  A negative answer at any step, other than at step 3, precludes a finding of disability.  The claimant bears the burden of proof at steps 1–4.  Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."  42 U.S.C. § 405(g).  Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

On January 8, 2020, the ALJ issued a decision finding that Plaintiff was not disabled under the Act (Tr. 1004).  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful

activity since October 12, 2013, the alleged onset date.  At Step Two, the ALJ found that Plaintiff had the following severe impairments: post-surgical changes of the thoracic spine, L4 compression deformity, and multilevel degenerative changes; mixed hearing loss; obstructive sleep apnea; neurocognitive disorder due to traumatic brain injury and memory loss; major depressive disorder; bipolar disorder; social anxiety disorder; obsessive-compulsive disorder; post-traumatic stress disorder; and level two obesity (Tr. 968-69).  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the Commissioner's list of presumptively disabling impairments, 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. § 404.1567(b), except that he could occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolding (Tr. 990-991).  He could occasionally balance, stoop, kneel, crouch and crawl.  (*Id*.).  He should not perform work tasks that require the use of a telephone and should work in an environment with a "moderate noise intensity level" or quieter as the Selected Characteristics of Occupations defines that term which gives examples of light traffic, a grocery store, or a department store.  (*Id*.).  He should avoid concentrated exposure to vibration, fumes, odor, dust, gasses, and areas of poor ventilation.  (*Id*.).  He should avoid concentrated exposure to hazards such as operating heavy machinery and unprotected heights.  (*Id*.).  He could understand and remember short instructions and complete simple one and two-step tasks and work-like procedures but could not understand or remember complex instructions.  (*Id.*).  He could maintain attention, concentration and persistence sufficient for completing routine, repetitive tasks at a consistent pace over a regular 40-hour workweek but could not have done so if the tasks were complex.  (*Id.*).  He could independently plan how to complete these simple, routine, repetitive

types of tasks.  (*Id.*).  He could interact with supervisors and coworkers and would have difficulty with sustained contact with the public but could tolerate occasional work-related interaction with the public.  (*Id.*).  He retained the ability to adapt adequately to work situations and changes that occur in the usual workplace and could work in a stable workplace with respect to tools, processes, and the setting.  (*Id.*).

At Step Four, the ALJ found Plaintiff was not able to perform his past relevant work.  At Step Five, the ALJ found there were other jobs in significant numbers in the national and local economy that Plaintiff could perform, such as cleaner polisher, mail clerk, and laundry worker (Tr. 1003).  Thus, the ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. 1004).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order.  The following summary of the record is directed to the points raised by Plaintiff.

### Agency Forms

Plaintiff was born in March 1966 and was 47 years old on the alleged onset date of October 12, 2013 (Tr. 259).  He filed for disability because of multiple traumas to his back, neck, shoulder, and ribs; PTSD; depression; hearing loss; high blood pressure; and cholesterol.  (*Id.*).  He indicated he stopped working on February 29, 2012 because his alleged disabilities prevented him from working.  (Tr. 321).  Plaintiff later indicated that he filed for disability because of his back injury/ difficulty sitting, standing, and lifting; flares in his depression; and difficulty being around others that would keep him from going to work.  (Tr. 1480).

**Evidentiary Hearing**

Plaintiff was represented by counsel at his first ALJ hearing on February 28, 2017.  (Tr. 44).  At that time, he testified as follows: he stopped working on February 29, 2012, because he had back surgery and had a constant pain in the middle of his lower back that radiated up to his shoulders, his neck, and into his arm with activity (Tr. 51-52).  The pain never goes away. (Tr. 51) (Tr. 52).  He was also unable to work because of issues with PTSD, OCD and some mental issues.  (Tr. 53).  His PTSD is usually triggered by a fear of weather since he was caught in a tornado, and he has panic attacks and anxiety.  (Tr. 54).  He felt a need to constantly check things multiple times due to OCD (i.e., check to make sure faucet is off).  (Tr. 54-56).  He suffers from depression that started after he was injured in the tornado.  As a result, he doesn't like to leave the house, doesn't have any friends, and is often irritable.  (Tr. 57, 64).

Plaintiff was also represented by counsel at his rehearing on December 4, 2019.  (Tr. 1020).  He continued to complain of the same symptoms and still had not worked since February 2012. (Tr. 1031).  He testified as follows: Dr. Vargo was his primary care physician for at least ten years.  (Tr. 1032).  Dr. Chandra was his psychiatrist that he had seen to manage medications since about 2012.  (Tr. 1033).  He saw a neurologist in 2017 for memory loss, confusion, sleep problems and old head injury.  (Tr. 1036).  His OCD and need to check things over and over continued.  (Tr. 1037-1038).  His interaction with people had not improved since the previous hearing, and he has isolated himself and stays depressed all the time.  (Tr. 1038).

A vocational expert (VE) also testified.  The VE was asked questions about a hypothetical person who has a marginal level of education; could perform work at the light physical demand level; could occasionally climb ramps and stairs; could never climb ladders, ropes or scaffolding; could occasionally balance, stoop, kneel, crouch, and crawl; should not perform tasks that requires

use of a telephone; should avoid even moderate exposure to noise (i.e., light traffic, a grocery store or department store); should avoid concentrated exposure to vibration and fumes, odors, dust, gases, and areas of poor ventilation; should avoid concentrated exposure to hazards (such as the operation of heavy machinery and unprotected heights); could understand and remember short instructions and could complete simple one and two step tasks and work-like procedures; could not understand or remember complex instructions; could maintain attention, concentration, and persistence, sufficient for completing routine and repetitive types of tasks, at a consistent pace over a regular 40 hour workweek, but could not do so if those tasks were complex; would retain the ability to plan how to complete these simple, rote, routine types of tasks; could interact with supervisors and co-workers, but would have difficulty with sustained contact with the public; and, would retain the ability to adapt adequately to work situations and changes that occur in the usual workplace, and should, therefore, work in a table workplace with respect to the tools, the processes, and the setting. (Tr. 1041-1043). (Tr. 1043).

The VE testified that the hypothetical person could be (1) a cleaner, polisher, DOT 709.687-010, light, SVP 2; (2) mail clerk, DOT 209.687-026, light, SVP; or (3) laundry worker, DOT 302.685.010, light, SVP 2. (Tr. 1044). On cross-examination, the VE indicated that the cleaner, polisher has a GED reasoning factor of 1 (R1), the mail clerk is a R3, and the laundry worker is a R2. (Tr. 1050). In her opinion, even though the mail clerk and laundry worker were classified higher than an R1, they're not necessarily doing more than one to two step tasks. (*Id.*). The VE also testified that the national numbers for mail clerk could be reduced by 15-20% based upon discrepancies in use of automation. (Tr. 1051).

The VE was asked a second hypothetical question with one modification to the hypothetical person: the individual could maintain attention, concentration, and persistence, sufficient for

completing routine, repetitive tasks, if they can be performed at a flexible pace of work or under end of day production goals or end of shift production goals, but, could not do so if the tasks were complex (i.e., precluding fast paced work like at a moving conveyor belt or assembly line).  (Tr. 1044-1045).   The VE testified that the positions given for hypothetical #1 would still fit hypothetical #2.  (Tr. 1045).

The VE was then asked a third hypothetical question based upon the time-period in which the hypothetical person was in the younger age category.  (Tr. 1045).  The VE testified that this hypothetical person could work as (1) a document preparer, DOT 249.587.018, sedentary, SVP 2; (2) address clerk, DOT 209.587-010, sedentary, SVP 2; or (3) cutter, paster, DOT 249.587-014, sedentary, SVP 2.  (*Id.*).  On cross-examination, the VE indicated that the document preparer is a R3, the address clerk is similar to the mail clerk (R3), and the cutter, paster is a R2.  (Tr. 1051-1052).

For a fourth hypothetical question, the VE was asked to assume the limitations in any of the first three questions and to add that due to distraction or to impairments or reduced accuracy related to distraction, that the hypothetical person is 60-70% less productive than similarly situated employees in terms of output.  (Tr. 1047).  The VE testified that employers allow up to 15% of the day, off task.  (Tr. 1048).  The VE testified that there would not be any light or sedentary, unskilled occupations that the hypothetical person could perform.  (Tr. 1047).

The VE was then asked if a hypothetical individual is missing work, due to impairment related low motivation and is missing work two to three times per month, would there be any unskilled, light or sedentary occupations that the individual could perform.  (Tr. 1048).  The VE testified that there would not be; over time, most employers would let an off task or less productive employee go to hire somebody else that can keep up with the pace of everyone else.  (Tr. 1048-

1049).

## Relevant Medical Evidence

**Dr. Adam Vargo**, **M.D.** had been Plaintiff's treating physician for at least 10 years.  (Tr. 1032).  Dr. Vargo opined that Plaintiff was not able to work.  (Tr. 656, 658).  He also provided a medical opinion on June 11, 2018, that Plaintiff was fully disabled from both a medical and mental standpoint and should get full disability for the rest of his life.  (Tr. 1766).  Plaintiff continued treatment and visits with Dr. Vargo from 2017 through 2019 for various complaints, including hypertension, sleep issues, memory loss, plantar fasciitis, PTSD, depression, and neck pain.  (Tr. 2076-2169, 2664-2689).

**Dr. James Bordieri, Ph.D**., a clinical psychologist, saw Plaintiff in 2014.  (Tr. 414-431). He noted that Plaintiff's concentration and attention were negatively affected by his physical pain. (Tr. 417).  Dr. Bordieri performed several psychological and cognitive tests on Plaintiff that found Plaintiff generally tested in the lower range of intellectual functioning (although he did note that some of those scores could be underestimates of his actual intellectual functioning).  (Tr. 430).  Dr. Bordieri also found that Plaintiff meets the criteria for Major Depressive Episode, Social Anxiety Disorder, and Posttraumatic Stress Disorder.  (*Id.*).

**Dr. Rakesh Chandra, M.D.** is Plaintiff's treating psychiatrist who saw him from 2013 through 2019 and diagnosed him with major depressive disorder, PTSD, and eventually bipolar disorder.  (Tr. 502-505, 508, 511, 756-760, 776-777, 833-838, 933-934).  Dr. Chandra wrote an opinion in May 2017 that Plaintiff is disabled and only functioning at about 30-40 percent of his capacity (or what he could have been prior to his injuries and problems).  (Tr. 1575).  Dr. Chandra also completed a Mental Residual Functional Capacity Assessment in February 2018 that indicated Plaintiff was moderately or markedly limited on all aspects of the assessment.  (Tr. 1742-1746).

Dr. Chandra then also wrote a letter on August 23, 2018, indicating that Plaintiff is severely limited in his ability to function with diagnoses of Major Depressive Disorder (single episode, severe), Mild Neurocognitive Disorder due to brain injury, Post-traumatic stress disorder (tornado), and Obsessive-compulsive disorder. (Tr. 1771). Dr. Chandra treated Plaintiff medicinally throughout the course of his visits. (Tr. 1782-1790, 2801-2812).

**Dr. Timothy P. Upchurch, M.D.** was Plaintiff's neurologist at SIH Brain & Spine Institute. Plaintiff treated with Dr. Upchurch for memory loss and insomnia in 2017 (Tr. 974-979, 1615-1645). He started Plaintiff on medication for PTSD and nightmares. (Tr. 1630).

### State Agency Consultative Examinations

**Adrian Feinerman, M.D.** assessed Plaintiff's medical conditions in February 2018 as an internist CE (Tr. 1749-1759). His summary indicates that Plaintiff was able to sit, stand, walk, speak, lift, carry, handle objects, and can handle funds on his own behalf. (Tr. 1755). Although Plaintiff complained of decreased hearing, he was able to carry on a normal conversation with Dr. Feinerman. (*Id.*). Plaintiff has a lumbar fusion due to vertebral facture and a history of hypertension without end organ damage. (*Id.*).

**David J. Warshauer, Ph.D.** assessed Plaintiff's mental conditions in March 2018 as a CE (Tr. 1760-1765). His summary of Plaintiff's current mental status indicates that Plaintiff should be diagnosed with Major Depressive Disorder (single episode, severe), Mild Neurocognitive Disorder due to traumatic brain injury, Post-traumatic stress disorder (tornado), and Obsessive-Compulsive Disorder (Tr. 1765). He believed that Plaintiff had some difficulty with orientation to time and estimated his intelligence to be in the borderline range. (*Id.*). Dr. Warshauer believed that Plaintiff's cognitive problems and depression affected his mood and lack of spontaneous conversation. (*Id.*).

**Lenore Gonzalez, M.D.** assessed Plaintiff's physical RFC initially in April 2015. (Tr. 173-175). She indicated that Plaintiff had exertional limitations and postural limitations. (Tr. 173). She indicated that his postural limitations were based upon a prior TS/LS fusion, Celiac disease, and hearing loss with ongoing tinnitus. (Tr. 174). She found that Plaintiff did not have manipulative or visual limitations; but, he did have communicative limitations such that he should avoid jobs that require answering phones. (*Id.*). She also found that Plaintiff had environmental limitations such that he should: avoid even moderate exposure to noise, avoid concentrated exposure to vibration, avoid concentrated exposure to fumes, odors, gases, poor ventilation, etc., and avoid even moderate exposure to hazards (like machinery and heights). (*Id.*).

Then, in April 2018, Dr. Gonzalez reassessed Plaintiff's physical RFC. (Tr. 1111-1113). She indicated that Plaintiff has exertional limitations. (Tr. 1111). She also found that Plaintiff had postural limitations (Tr. 1112). She otherwise found that Plaintiff had no manipulative limitations, visual limitations, communicative limitations, or environmental limitations. (*Id.*).

**Dr. James Hinchen, M.D.** concurred with Dr. Gonzalez's April 2018 assessment of Plaintiff's physical RFC in July 2018. (Tr. 1127-1129).

**Donald Henson, Ph.D.** assessed Plaintiff's medical impairments (MDI) in April 2018. (Tr. 1109-1111). Dr. Henson determined that Plaintiff had one or more medically determinable impairments, including spine disorders (severe), essential hypertension (severe), depressive, bipolar and related disorders (primary & severe), neurocognitive disorders (secondary & severe), trauma and stressor related disorders (severe), and anxiety and obsessive compulsive disorders (severe). (Tr. 1109).

**Dr. Russell Taylor, Ph.D**. concurred with Dr. Henson's MDI in July 2018. (Tr. 1123-1126).

## Discussion

### Residual Functional Capacity

The ALJ must consider an assessment of the claimant's RFC at the fourth and fifth steps of the applicable analysis.  The assessment includes a determination of what work-related activities the claimant can perform despite her limitations.  *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545(a)(1). The RFC must be assessed based on all the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1); *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004).  A vocational expert's ("VE") testimony can satisfy the assessment requirements only if that testimony is reliable. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008).

Plaintiff argues that the ALJ made a material mistake of fact by overruling Plaintiff's objection that the occupations the VE provided would not be possible given a limitation to 1-2 step tasks, because a limitation to 1-2 step tasks restricts an individual to performing jobs with a Reasoning Level of One.  Plaintiff contends the ALJ failed to resolve this conflict in the VE's testimony and should not have relied on the VE's findings.  Defendant argues that any mistake made by the ALJ was harmless.

The ALJ's RFC assessment limited Plaintiff to 1-2 step tasks.  The VE opined that Plaintiff would be able to carry out the duties of a cleaner polisher, mail clerk, and laundry worker.  Under the Dictionary of Occupational Titles ("DOT"), these positions involve reasoning levels of 1 for the cleaner polisher, 3 for the mail clerk and 2 for the laundry worker.  Plaintiff argues that Reasoning Levels 2 and 3 are incongruous with the ALJ's determination that Plaintiff could only perform 1-2 step tasks.  Under the DOT, 1-2 step task limitation translates to a Reasoning Level 1. *See* DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702.

Social Security Ruling ("SSR") 00-4p imposes a two-fold responsibility on the ALJ if he intends to rely on testimony from a VE about the requirements of a particular job.  First, the ALJ

must specifically ask the VE about any possible conflicts between the VE's testimony and the DOT.  Second, if there is an apparent conflict, the ALJ must obtain a reasonable explanation from the VE for the conflict.  SSR 00-4p; *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).  For a conflict to be "apparent" it must be so obvious that the ALJ should have recognized it without any assistance.  *Sawyer v. Colvin*, 512 F. App'x 603, 610 (7th Cir. 2013).

Here, the ALJ satisfied the first step by asking the VE if her testimony was consistent with the DOT.  The VE answered yes and stated that where the DOT did not address certain parts of the hypothetical questions, she based her conclusions about the impact of those limits on her own professional opinion.

However, as to the second step, the Court finds that the assigned Reasoning Levels of the listed jobs do conflict with the ALJ's RFC assessment.  While the VE testified that the job categories identified as suitable for Plaintiff all involved 1-2 step tasks, despite having varying reasoning levels, Plaintiff's counsel cross-examined the VE and elicited statements that seriously called into question the reliability of the VE's bottom-line conclusions.

If the basis of the VE's testimony is questioned at the hearing, "then the ALJ should make an inquiry…to find out whether the purported expert's conclusions are reliable."  *Overman*, 546 F.3d at 465 citing Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002).  Here, the ALJ did not perform such an inquiry.  Nor did the ALJ specifically reference or analyze the issue questioned in his decision.[3]  Instead, the ALJ unquestioningly relied on the VE's bottom line.  This Court agrees with Plaintiff that the ALJ erred in failing to resolve the conflict between the VE's testimony and the DOT standards.  *See Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (explaining that

---

[3] The ALJ indicates that Plaintiff objected to the occupations that the VE gave given a limitation to 1-2 step tasks but continues to say that the RFC did not contain a limitation to 1-2 step tasks (thus overruling the objection).  This statement directly conflicts with the ALJ's RFC and hypothetical questions to the VE which both contained a limitation to 1-2 step tasks.

when the ALJ relies on a series of jobs and all but one are precluded, remand is necessary); *see also Overman*, 546 F.3d at 456 (the ALJ has a duty to resolve conflicts between the VE's testimony and the DOT and that conflicting information may not be sufficient to support the ALJ's decision); *see also Boone v. Barnhart*, 353 F.3d 203, 206, 208-209 (3d Cir. 2003) (VE's testimony does not by itself provide substantial evidence of claimant's ability to perform significant number of other jobs when testimony conflicts with DOT and neither VE nor ALJ acknowledge or explain conflict). On remand, the Commissioner should rectify this inconsistency.

**Auditory Limitations**

There is no dispute that Plaintiff suffers from hearing loss.  The dispute centers on the limitations applied by the ALJ and the related jobs the ALJ found Plaintiff could perform.  The ALJ limited Plaintiff to work tasks that did not require the use of a telephone and involved a work environment with a "moderate noise intensity level" or quieter.  Plaintiff argues that the ALJ did not consider a state agency reviewing physician's opinion that Plaintiff was unable to work in an environment with even moderate noise exposure.  Defendant maintains that the ALJ expressly considered the objective medical findings and opinions about Plaintiff's auditory abilities and, therefore, adequately accommodated Plaintiff's auditory limitations.

In his analysis, the ALJ summarized the opinion from Dr. Gonzalez, a state agency reviewing physician, that limited Plaintiff to avoiding even moderate exposure to noise and hazards.  The ALJ then summarized the records from Midwest Ear Nose and Throat which noted that Plaintiff had hearing loss and should be limited to a work environment with moderate noise. The ALJ's summary and analysis of Plaintiff's auditory and hearing limitations ends there.  The ALJ's RFC assessment limits Plaintiff to performing work tasks that do not require the use of a telephone and are in an environment with a "moderate noise intensity level" or quieter.

In formulating his RFC assessment, the ALJ failed to articulate, even minimally, his reasons for rejecting the evidence in the record that would have limited Plaintiff to **avoiding** **all** moderate noise exposure. *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Specifically, the ALJ failed to provide any analysis or discussion as to why a less restrictive limitation than that recommended by Dr. Gonzalez was appropriate. *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (the ALJ needs to build a "logical bridge" between the evidence and conclusion); *see also Young v. Barnhart*, 362 F.3d 995, 1003-1005 (7th Cir. 2004) (RFC assessment must include all limitations supported by the record). This analysis is relevant and critical since the ALJ's recommended job options for Plaintiff are all "moderate" noise level.[4] Accordingly, remand is appropriate in this case for further assessment and analysis.

### Moderate Limitations

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). If the ALJ finds that a Plaintiff has a moderate limitation in maintaining concentration, persistence, or pace, that limitation must be accounted for in the hypothetical question posed to the VE. And in most cases, limiting the Plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace. Defendant contends that Plaintiff failed to meet his burden in specifying the objective corroboration for additional limits on his mental functioning beyond those the ALJ found. The Court agrees with Defendant.

---

[4] Cleaner and Polisher, DOT Job No. 709.687-010, *see* 1991 WL 679134; Mail Clerk, DOT Job No. 209.687-026, *see* 1991 WL 671813; Laundry Worker, DOT Job No. 302.685-010, *see* 1991 WL 672657

The Seventh Circuit notes, "[a]gain and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th 2019).  In *Winsted*, at step three, the ALJ found that the Plaintiff had moderate difficulty with social functioning and concentration, persistence, and pace. The RFC assessment limited Plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Id.*  The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace . . . ." *Id.* at 477.

Unlike in *Winstead*, here, the ALJ assessed the same limits in his RFC finding as he stated in his hypothetical question to the VE.  Both the limits in the RFC finding and the hypothetical question to the VE included specific instruction regarding Plaintiff's concentration, persistence, and pace.  The Seventh Circuit cases cited by Plaintiff relate to instances in which the hypothetical question did not accommodate all of the claimant's limitations in concentration, persistence, or pace.  That did not happen here; the ALJ mirrored the RFC in the hypothetical questions to the VE.

To the extent Plaintiff argues that the ALJ erred by failing to admit the state agency doctor's opinion and failing to give treating physician Dr. Chandra's opinion controlling weight, an ALJ must "offer good reasons for discounting" the opinion of a treating physician. 20 C.F.R. § 416.927(c)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).  If a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. 20 C.F.R. § 404.1527(c)(2)-(5); *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011).  The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the

treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Id.* When making his decision, the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In doing so, the ALJ must "connect the dots" between the claimant's impairments—as supported by substantial evidence in the record—and the RFC finding. *Young v. Barnhart*, 362 F.3d 995, 1002-03 (7th Cir. 2004).

Plaintiff argues that his problems maintaining attention and concentration and performing activities within a schedule are supported by treating psychiatrist Dr. Chandra's indication that Plaintiff had marked limitations in sustained concentration and persistence and Dr. Bordieri's indication that Plaintiff would need to work at a position which required minimal focus. Plaintiff claims that the ALJ erred by omitting those restrictions from the RFC assessment.

The ALJ's opinion provides a thorough summary of Dr. Chandra's treatment. However, the ALJ gives Dr. Chandra's treating medical source statements some weight, but not controlling weight. In support of his reasoning, the ALJ specifically references shortcomings in Dr. Chandra's records:

> "Dr. Chandra completed Treating Source Statements/Mental Residual Functional Capacity Assessments numerous times, but he never provided a narrative."

> "Further, the forms he completed do not provide the regulatory definitions of "moderate", "marked", and "extreme as found in 12.00F2."

> "Dr. Chandra's medical source statements are not consistent with the other substantial evidence in the record, including numerous normal mental status examinations."

> "While the claimant described many psychological or psychiatric abnormalities, Dr. Chandra did not provide a description of observable facts or medical descriptions of abnormalities to substantiate those allegations."

> "The length, nature, extent of treatment, and specialization of treatment all weigh in Dr. Chandra's favor. However, his opinion is not supportable as he did not

provide a rationale citing objective evidence in support of his mental status statement and he did not show familiarity with the regulatory definitions of moderate, marked, and extreme.  His mental status statement is not consistent with the record as a whole.  If the claimant really were at a marked or extreme level in the areas that Dr. Chandra listed, it seems that he would not have the level of functioning that he still enjoys."

"As described elsewhere in this decision, the claimant appears to be much more functional than Dr. Chandra describes in his opinions."

(Tr. 999-1000).

The ALJ concluded that while subjective allegations are undoubtedly part of a mental status examination, policy requires "observable facts that can be medically described and evaluated." Dr. Chandra's opinions, in this case, were not well-supported by medically acceptable clinical and laboratory diagnostic techniques.

The ALJ also gave Dr. Bordieri's opinion little weight.  Dr. Bordieri opined the claimant had limited potential for success in further employment.  The ALJ noted that Dr. Bordieri performed a very thorough psychological evaluation, but ultimately based his conclusion that the claimant could not work on his need to change positions too frequently.  Accordingly, Dr. Bordieri based his opinion on a physical limitation even though he is not a physician and was not qualified to render such an opinion.  Accordingly, the ALJ found that the opinion seemed to exceed the scope of the doctor's training and found the opinion was entitled to little weight because it was not supportable, was not consistent with the record as a whole, and most importantly on grounds of specialization (which Dr. Bordieri did not have).

The ALJ built a logical bridge from the evidence to his conclusions, and Plaintiff failed to identify any persuasive medical source opinion or other objective evidence that would support greater restrictions than those incorporated by the ALJ in his RFC assessment and hypotheticals to the VE.  *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).  Accordingly, the ALJ

reasonably assessed all factors when finding Plaintiff retained the capacity for a limited range of unskilled, light work. The Court finds substantial evidence supports his findings.

## Symptom Evaluation

The ALJ's findings regarding symptoms are accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Social Security regulations "require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). If the adverse finding is premised on inconsistencies between Plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski*, 245 F.3d at 887. "It is only when the ALJ's determination lacks any explanation or support that [a court] will declare it to be "patently wrong." *Elder v. Astrue,* 529 F.3d 408, 413 14 (7th Cir. 2008); *Curvin v. Colvin,* 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong.").

Here, Plaintiff argues that the ALJ failed to adequately assess his combined impairments. Defendant argues that the ALJ reasonably considered the appropriate regulatory factors when evaluating the impact of Plaintiff's alleged symptoms on his ability to work. The Court agrees with Defendant and defers to the ALJ's analysis and conclusions. *See Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) (an ALJ's job is to weigh conflicting evidence and while the loser in such a process is bound to believe that the finder of fact should have been more favorable to his

cause, the substantial-evidence standard asks whether the administrative decision is rationally supported, not whether it is correct).

The ALJ provided enough of an explanation to trace the path of his reasoning with respect to Plaintiff's impairments to sufficiently connect the evidence to his conclusions.  The ALJ assessed Plaintiff as having a range of light, unskilled work capacity that accommodated additional postural, auditory, environmental, and mental restrictions, based in part on Plaintiff's allegations of symptoms.  The ALJ reasonably considered the appropriate regulatory factors when evaluating the impact they had on his daily activities, the objective medical evidence of mental health treatment including psychotherapy counseling, use of medication, and his ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i)-(v).  The ALJ also considered consistency of his symptom allegations with evidence of his daily activities.  The ALJ acknowledged that Plaintiff's physical and mental conditions could be expected to limit his abilities to a reduced range of light unskilled work with many additional limits, giving some credit to Plaintiff's symptom complaints.  The ALJ thus acknowledged that Plaintiff experienced some level of symptoms and limitations, but reasonably concluded that he was not completely disabled by his symptoms.  *See Curvin v. Colvin,* 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong.").  When evaluating Plaintiff's symptoms, the ALJ included a lengthy explanation of Plaintiff's subjective complaints, a detailed explanation of Plaintiff's lengthy medical record including two traumatic injuries, and Plaintiff's mental health and management through medication.

<u>**Conclusion**</u>

For the foregoing reasons, the Commissioner's final decision denying David Ray A.'s application for disability and DIB is **REVERSED and REMANDED** to the Commissioner for

rehearing and reconsideration of the evidence consistent with this Court's Memorandum and Order, pursuant to sentence four of 42 U.S.C. §405(g). The Clerk of Court shall enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: March 30, 2024**

**STACI M. YANDLE**
**United States District Judge**